227 P.3d 475

**In re the Marriage of Patricia M. AKSAMIT, Petitioner/Appellee,**

v.

**Greg KRAHN, Respondent/Appellant.**

**No. 1 CA–CV 08–0806.**

Court of Appeals of Arizona, Division 1, Department B.

March 18, 2010.

Law Office of Danny L. Klein By Danny L. Klein, Scottsdale, Attorney for Petitioner/Appellee.

Franks, Sheldon, & Houser, PC By Todd Franks, Steven D. Sheldon, Phoenix, Attorneys for Respondent/Appellant.

## OPINION

BARKER, Judge.

¶ 1 The issue before us in this opinion is the proper role of a best interests attorney ("BIA") in family court proceedings. For the following reasons, and those set forth in a simultaneously filed memorandum decision,[1] we affirm in part, vacate in part and remand for a new trial on custody.

### Facts and Procedural Background

¶ 2 Patricia K. Aksamit ("Mother") filed a petition for dissolution of her marriage to Greg Krahn ("Father") in August 2007. Father and Mother are the parents of two minor children, ages eight and five when the petition was filed. In her petition, Mother sought joint legal custody and primary physical custody of the children. Father sought sole legal custody with parenting time for Mother. In a separate pretrial statement, Mother amended her request and sought sole legal custody for herself with parenting time for Father.

¶ 3 At a hearing on temporary orders, the court appointed a BIA to represent the minor children's best interests. In pertinent part the order provided:

> According to Rule 10(E), Arizona Rules of Family Law Procedure effective January 1, 2006, . . . a *Best Interests Attorney shall participate in the conduct of the litigation to the same extent as an attorney for any party.* The Best Interests Attorney shall attend all hearings and participate in trials or evidentiary hearings by offering evidence, examining witnesses, etc. The *Best Interests Attorney shall not submit a report or testify in court.*
>
> . . . .

> The Best Interests Attorney shall attend all court hearings concerning the children unless excused by the Court upon written motion, and *shall participate in the conduct of litigation to the extent authorized by Rule 10, Arizona Rules of Family Law Procedure.*

(Emphasis added.)

¶ 4 At the trial to the court, Mother and Father were the only two sworn witnesses. At the outset of the trial, the court asked the BIA to "give me a report." The BIA then orally responded.

¶ 5 After the trial, the court issued its decree, granting Mother sole custody of the children with Father receiving parenting time. The court's findings make multiple, specific references to the information conveyed by the BIA in her report, including the following:

**CUSTODY AND PARENTING TIME**

In determining custody and parenting time, the Court is guided by the factors set forth in A.R.S. Section 403(A). Those factors, and the Court's findings thereon, are as follows:

**The wishes of the child's parent or parents as to custody.**

Mother requests sole custody as the parents are unable to communicate with each other regarding major issues involving the minor children. *This view is supported by the opinion and experience of the Best Interests Attorney ["BIA"], who told the Court that although Father has come a long way from the beginning of the case in his residential stability and in his volatility regarding his ability to discuss issues regarding his children, he remains bitter and angry at Mother to the extent that he is unable or unwilling to focus on the children's best interest much of the time.* Father is also requesting sole custody of the children.

. . . .

---

**1.** Though other issues were asserted, we address them in a simultaneously filed memorandum decision. Arizona Rule of Civil Appellate Procedure 28(g) provides as follows:

**Partial Publication of Decisions.** When the court issuing a decision concludes that only a portion of that decision meets the criteria for publication as an opinion, the court shall issue that portion of the decision as a published opinion and shall issue the remainder of the decision as a separate memorandum decision not intended for publication.

**The interaction and interrelationship of the child with the child's parent or parents, the child's siblings and any other person who may significantly affect the child's best interest.**

Mother has two older sons from another relationship, Scott (18) and Steven (almost 17) who live with her and have good relationships with their younger brothers, providing some caretaking support to the minor children. *The BIA indicates that she could find no deficiencies in the caretaking abilities of the older boys nor any problems in the relationships between the siblings.*

(Emphasis added in italics.)

¶ 6 Father filed a motion for new trial, which was denied. He timely appealed.[2] We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12–2101(B), (F)(1) (2003).

### Discussion

¶ 7 Father argues the court erred by considering the BIA's report when determining child custody.[3] We agree. Because the error was prejudicial, we vacate the custody order.

¶ 8 We review a family court's decision concerning custody for an abuse of discretion. *Owen v. Blackhawk*, 206 Ariz. 418, 420, ¶ 7, 79 P.3d 667, 669 (App.2003). However, we interpret the Arizona Rules of Family Law Procedure de novo. *Kline v. Kline*, 221 Ariz. 564, 569 n.4, 212 P.3d 902, 907 n.4 (App.2009).

### 1. The Framework Provided in the Rules

¶ 9 To resolve this matter we first turn to the rule permitting the appointment of a BIA. Rule 10(A)(1) provides as follows:

1. The court may appoint one or more of the following:

   a. a best interests attorney;

   b. a child's attorney; or

   c. a court-appointed advisor.

Thus, there are three specific positions to which the court may appoint qualified individuals under circumstances specified in the rule. *See* Ariz. R. Fam. L.P. 10(A)(2) (setting forth bases for appointment by the court of an attorney to represent a child or a court-appointed advisor); Ariz. R. Fam. L.P. 10(B), (C) (qualifications of an appointed child's attorney, best interests attorney, or a court-appointed advisor).

¶ 10 As one would suspect, the three positions have different duties and responsibilities. Before setting forth the rule's delineation of duties, it is helpful to consider the descriptive nature of the titles for each of the three different positions. Two of the positions are specifically designated as "attorney" positions: "A best interests *attorney*" and "a child's *attorney.*" As the title suggests, the duties of each of these two positions are those consistent with that of an attorney, one who acts in a representative capacity, as contrasted with a witness, who testifies based on his or her knowledge and experience. On the other hand, the third position is designated "a court-appointed *advisor.*" Similarly, the duties of an advisor are generally viewed as one who provides counsel or input, a witness rather than one who acts in a representative capacity as does an attorney.

¶ 11 With that background, we turn to Rule 10(E) for the specific delineation of the duties and responsibilities that pertain to each position:

---

2. Although Father's notice of appeal was premature, it was followed by a final appealable judgment. *See Barassi v. Matison*, 130 Ariz. 418, 422, 636 P.2d 1200, 1204 (1981). A premature notice of appeal takes effect when the court enters the final judgment. *Id.; Schwab v. Ames Constr.*, 207 Ariz. 56, 58, ¶ 9, 83 P.3d 56, 58 (App.2004). Accordingly, the appeal became effective on February 13, 2009, when the court entered a final judgment.

3. To the extent Mother asserts Father waived this argument, we disagree. At the very least, Father raised this issue in his motion for new trial, which the court considered and denied. *See, e.g., Payne v. Payne*, 12 Ariz.App. 434, 435, 471 P.2d 319, 320 (App.1970) (explaining a trial court must have an opportunity to rule on legal theories to preserve an issue for appeal). Further, it is irrelevant whether Father objected to previous reports of the BIA because those reports are not at issue on appeal.

**E. Participation in Proceeding by Child's Attorney, Best Interests Attorney, And Court–Appointed Advisor.**

1. A child's attorney or best interests attorney shall participate in the conduct of the litigation to the same extent as an attorney for any party.

2. A child's attorney, best interests attorney, and court-appointed advisor may not engage in *ex parte* contact with the court except as authorized by law other than this rule.

3. A court-appointed advisor may not take any action that may be taken only by a licensed attorney, including making opening and closing statements, examining witnesses, and engaging in discovery other than as a witness.

4. The court shall ensure that any court-appointed advisor for a child has an opportunity to testify or submit a report setting forth:

   a. the court-appointed advisor's recommendations regarding the best interests of the child; and

   b. the basis for the court-appointed advisor's recommendations.

5. In a proceeding, a party, including a child's attorney or best interests attorney, may call any court-appointed advisor for the child as a witness for the purpose of cross-examination regarding the advisor's report without the advisor's being listed as a witness by a party.

6. An attorney appointed as child's attorney or best interests attorney may not:

   a. be compelled to produce the attorney's work product developed during the appointment;

   b. be required to disclose the source of information obtained as a result of the appointment;

   c. submit a report into evidence; or

   d. testify in court.

7. Subdivision 6 does not alter the duty of an attorney to report child abuse or neglect under applicable law.

¶ 12 As can be seen from the rule, there are two key differences between a child's attorney and a BIA, as contrasted with a court-appointed advisor. First, the court *"shall ensure"* that a court-appointed advisor "has an opportunity to testify or submit a report," Rule 10(E)(4) (emphasis added), whereas one who serves as a child's attorney or BIA *"may not ... submit a report into evidence"* or "testify in court." Ariz. R. Fam. L.P. 10(E)(6) (emphasis added). Second, while a child's attorney or BIA *"shall participate ... to the same extent as an attorney* for any party," Rule 10(E)(1) (emphasis added), a court-appointed advisor *"may not* take any action" that is only permitted by a licensed attorney. Ariz. R. Fam. L.P. 10(E)(3) (emphasis added). Thus, there are bright line delineations provided in the rule: a child's attorney or BIA may act in a representative capacity and urge the court to reach a particular result based upon the evidence presented. However, like any other attorney functioning in a representative capacity, the argument and positions taken by the attorney do not themselves constitute evidence.

¶ 13 Though the rule provides bright line delineations between a child's attorney and a BIA as contrasted with a court-appointed advisor, the rule does not delineate the differences between a child's attorney and a BIA. The committee comment, however, is helpful. In pertinent part it provides:

> The American Bar Association Standards of Practice for Lawyers Representing Children in Custody Cases ["ABA Standards"], adopted August 2003, provides guidance to the court, counsel, and litigants about the appointment of attorneys for children. The Standards include suggestions about when and how an attorney should be appointed, and in which capacity, and detail what the attorney's responsibilities are to the court and the client.

Ariz. R. Fam. L.P. 10, cmt. Thus, we turn to the ABA Standards.

¶ 14 As to the distinction between a child's attorney and a BIA, the ABA Standards provide as follows:

> B. Definitions

1. "Child's Attorney": A lawyer who provides independent legal counsel for a child and who owes the same duties of undivided loyalty, confidentiality, and competent representation as are due an adult client.

2. "Best Interests Attorney": A lawyer who provides independent legal services for the purpose of protecting a child's best interests, without being bound by the child's directives or objectives.

ABA Standards § II(B)(1), (2). As the commentary to the ABA Standards states:

The essential distinction between the two lawyer roles is that the Best Interests Attorney investigates and advocates the best interests of the child as a lawyer in the litigation, while the Child's Attorney is a lawyer who represents the child as a client.

ABA Standards § II(B), cmt. Thus, a trial court will consider appointment of a child's attorney, for an older child who has judgment and maturity, to represent that child's views. On the other hand, a BIA will be appointed when the court determines, due to the child's lack of maturity or judgment or other circumstances, that it is more appropriate for a lawyer to be appointed to discern— and then advocate—the child's best interests. As the Commentary provides "[n]either kind of lawyer is a witness." ABA Standards § II(B), cmt. Indeed, the ABA Standards are in express conformity with our rules in precluding either type of attorney from acting as a witness:

B. Lawyer's Roles

A lawyer appointed as a Child's Attorney or Best Interests Attorney should not play any other role in the case, and should not testify, file a report, or make recommendations.

ABA Standards § III(B). The commentary to this standard provides:

Neither kind of lawyer should be a witness, which means that the lawyer should not be cross-examined, and more importantly should neither testify nor make a written or oral report or recommendation to the court, but instead should offer traditional evidence-based legal arguments such as other lawyers make. However, explain-

ing what result a client wants, or proffering what one hopes to prove, is not testifying; those are things all lawyers do.

ABA Standards § III(B), cmt. We do not, as Rule 10 did not, *adopt* the ABA Standards as a whole as binding upon us. The committee comment indicates that the ABA Standards "provide [ ] guidance" and "include suggestions." *Id.* We employ them in that fashion here and find them persuasive as to the points referenced.

¶ 15 Thus, the express language of our rules, as well as the guidance we receive from the ABA Standards, make it plain that a child's attorney, a BIA, and a court-appointed advisor have distinct and separate roles with definite parameters that apply to their involvement in family court proceedings.

### 2. *Application of Rule 10 to the Proceedings Here*

¶ 16 In this case there was a clear departure from the permissible role of the BIA. As a practical matter, the BIA functioned as a court-appointed advisor, giving a substantive report that was treated as evidence, even though the minute entry appointing her and the terms of Rule 10 expressly precluded her from acting in that role.

¶ 17 Specifically, the trial court asked for, and the BIA gave, "a report." The exchange began with "I'm gonna ask [the BIA] to give me a report." It concluded with the BIA saying, "So that's my report and my recommendations to the Court." In between, the BIA spoke for what now comprises six transcript pages of substantive information based upon the BIA's own investigation in meetings with the parents, caretakers, and other relevant individuals. For instance, the BIA told the court:

I'm supporting the mother's request for sole custody.... There have been allegations that mother's home is unfit. CPS has been involved. My social worker at the time was [sic] to the home. I have met the boys very often....

I've met with the older boys which were an issue for Mr. Krahn in terms of the older boys helping their single mom watch

the boys while she's at work. . . . I do not feel that the boys are at risk in the mother's home at all. I don't think her home poses a risk.

. . . .

. . . In my interaction with [Father] he was extremely volatile and angry.

. . . .

While Father, I believe, from what he has told me, is back on his meds . . . he's very bitter. He's very angry. He does not focus. . . .

. . . .

. . . Their [Mother's and Father's] communication is not good at all. And so for them to try to make some decisions that may come up about the boys, I don't see them co-parenting.

These statements by the BIA clearly violated the requirement of Rule 10(E)(6)(c) and (d) specifying that a BIA "may not . . . submit a report into evidence" or "testify in court."

¶ 18 Mother argues, however, that the BIA's oral report was not formally offered "into evidence" and that the BIA did not "testify" because she was not sworn before offering her report. Regardless, as we discuss below, *infra* ¶ 20, it is clear that the trial court relied on the report as though it was evidence and as though the BIA had been sworn. The use of the report violates the rule.

¶ 19 There was nothing inappropriate about the BIA's statement to the court that "I'm supporting the mother's request for sole custody." This advocacy statement was within the clear parameters of the rule. As

the BIA, she was charged with presenting her *position* to the court with regard to what is in the children's best interests. *Supra* ¶¶ 13–14. Taking sides and supporting a particular position is what a BIA is called upon to do. *Id.* If, in her so-called "report" she had referred to evidence that would properly come before the court from a source other than herself, her "report" would have been the equivalent of an opening statement or closing argument and would have been quite proper. The error here is that both the BIA and the trial court treated the information or report from the BIA (however it is denominated) as *evidence* upon which, at least in part, the child custody decision was based. This is completely contrary to both the BIA's order of appointment and Rule 10.[4]

¶ 20 That the trial court relied upon the BIA's report as evidence is plain. As noted earlier, in its written findings,[5] the trial court indicated that Mother's request for sole custody "is supported by the opinion and experience of the [BIA], who told the Court that [Father] . . . remains bitter and angry at Mother to the extent that he is unable or unwilling to focus on the children's best interest much of the time." In short, the court relied upon the BIA's custody opinion to decide the custody question. Father had cited to the caretaking done by Mother's older sons as a reason he should have sole custody. As to this contested issue, the trial court expressly found that "[t]he BIA indicates that she could find no deficiencies in the caretaking abilities of the older boys nor any problems in the relationships between the siblings." Although Mother attempts to de-

---

**4.** We do not suggest strict compliance with the Rules of Evidence. Those rules have been relaxed for purposes of Family Court proceedings unless the Rules of Evidence are invoked by one of the parties. *See* Rule 2(B)(1) (providing that a party, upon written notice, may invoke strict compliance with the Arizona Rules of Evidence, certain rules excepted). However, when those same rules expressly prohibit a BIA from "submit[ting her] report into evidence" or "testify[ing] in court," Rule 10(E)(6)(c) and (d), the report or statement offered here is in direct violation of that rule.

**5.** In making a custody determination, the court must consider the factors enumerated in A.R.S. § 25–403(A) regarding the children's best interests. If custody is contested, the court must

issue findings on the record concerning all relevant factors and the reasons why its decision is in the children's best interests. A.R.S. § 25–403(B) (Supp.2009). Those factors include: 1) each parent's wishes regarding custody, 2) the child's wishes regarding custody, 3) the interaction of the child with his parents, siblings and any other person who may significantly affect his best interests, 4) the child's adjustment to home, school and community, 5) the mental and physical health of all individuals involved, 6) which parent is more likely to allow the child frequent and meaningful continuing contact with the other parent, and 7) which parent has provided primary care of the child. A.R.S. § 25–403(A)(1)–(7).

**74**

pict the record as showing that the BIA merely functioned as an attorney pointing to other evidence, the record simply does not permit that conclusion. The trial court expressly based its finding as to custody on "the opinion and experience of the [BIA]."

### 3. Prejudice Is Required

¶ 21 Not only was the error plain in this case, it was also prejudicial to Father. The Arizona Constitution provides that "[n]o cause shall be reversed for technical error in pleadings or proceedings when upon the whole case it shall appear that substantial justice has been done." Ariz. Const. art. 6, § 27; *see also* A.R.S. § 13–3987 (2001) ("Neither a departure from the form or mode prescribed in respect to any pleadings or proceedings, nor an error or mistake therein, shall render the pleading or proceeding invalid, unless it actually has prejudiced, or tended to prejudice, the defendant in respect to a substantial right."); Ariz. R. Fam. L.P. 86 ("No error [merits relief] unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.").

¶ 22 On core issues in the case, whether Father or Mother should have sole custody and the extent to which the older siblings were permissible caretakers, the BIA offered information based upon a series of interactions and interviews that took place over a period of weeks and gave her own opinion regarding custody. The court expressly relied upon the BIA's information and opinion in coming to its conclusions. The error was prejudicial and we must vacate the order as to custody and parenting time.

### Conclusion

¶ 23 For the foregoing reasons, and those set forth in the simultaneously filed memorandum decision, we vacate the trial court's custody order, affirm on the other issues, and remand for proceedings consistent with this opinion.

CONCURRING: PATRICIA K. NORRIS, Presiding Judge, and PETER B. SWANN, Judge.