SWANN, Judge:
*1048 ¶ 1 In this family-law appeal, we hold that decrees awarding joint legal decision-making with one parent having the final decision-making authority on certain issues must be interpreted as awarding sole legal decision-making on those issues. We further hold that while the court may base an award of legal decision-making on the decisions the parents are likely to make, it may not substitute its judgment for that of the parents and make parenting decisions for them when they are unable to agree.
¶ 2 In this case, the evidence established that the parents were completely unable to agree on medical, dental, mental-health, and therapy issues concerning their child. While the record contained evidence of the father's shortcomings, the evidence also established that the mother had repeatedly failed to secure treatments for the child, and the court therefore did not abuse its discretion by awarding sole legal decision-making to the father on those issues.
FACTS AND PROCEDURAL HISTORY
¶ 3 In September 2010, a child ("Child") was born to Aparna Sundaram ("Mother"), an osteopathic doctor, and Robert J. Nicaise, Jr. ("Father"), a medical doctor. Father became a stay-at-home parent in 2012 after his medical license was revoked for misconduct. Father came to believe that Child was developmentally delayed, but Mother did not agree.
¶ 4 In August 2014, school-district assessments indicated that Child would qualify for special-education services; Mother thereafter enrolled Child in private home tutoring instead of preschool. Also in August 2014, Father obtained a referral for Child to be seen by a behavioral pediatrician for suspected autism. Mother objected to the referral but ultimately participated in the November 2014 appointment, which resulted in a qualified autism diagnosis and a recommendation for a standardized autism assessment.
¶ 5 Meanwhile, in September 2014, Mother and Father filed competing actions (later consolidated) to establish paternity, legal decision-making, parenting time, and child support. In November 2014, the parties stipulated to paternity and the court entered temporary orders on legal decision-making and parenting time. The court noted grave concerns about each parent and about their ability to cooperate, but awarded Mother and Father joint legal decision-making. The court limited Father's parenting time to once-weekly supervised visits until he attended four psychiatric appointments and followed all recommendations, at which time he was to assume "week on/week off parenting time." But though Father promptly attended the appointments and was recommended no treatment, the court nonetheless ordered in February 2015 that his parenting time would remain limited to supervised visits on a twice-weekly basis. In December 2015, the court granted Mother's request for sole legal-decision-making authority with respect to a medical well-child visit and dental check-up.
¶ 6 Mother and Father's interactions during the temporary-orders phase were highly contentious and precipitated extensive court involvement. Child's best interests attorney described the case as "one of the most divisive family court cases [he] has seen." Mother and Father engaged in constant conflict, to the point that their court-appointed parenting coordinator ultimately asked to resign based on their lack of progress.
¶ 7 Mother and Father were unable to work together, especially with respect to issues *1049 regarding Child's mental and behavioral health. Multiple professionals diagnosed Child with autism and recommended that she receive various therapies, including occupational therapy, speech and language therapy, a feeding evaluation and therapy, and autism-specific applied behavioral analysis therapy. Mother, however, maintained her belief that Child is not autistic, and her medical expert and Child's play therapist agreed. But notably, even those two professionals opined that Child had developmental issues that required occupational, speech, and socialization therapies.[1] Mother facilitated only limited sessions of such therapies, and she declined to arrange any autism-specific therapy sessions. Mother also failed to vaccinate Child timely or resolve Child's need for extensive dental treatment. Mother blamed her failure to secure medical and dental treatment on Father's interference. She testified that Father cancelled many medical and dental appointments and, with respect to at least one dentist, caused Child to receive a referral instead of treatment because Father told the dentist that Child is autistic. With respect to mental and behavioral-health services, Mother blamed her failure to arrange therapy on provider waiting lists and difficulty in finding therapists with awareness of trauma-based delays.
¶ 8 For brief periods, Mother enrolled Child in two preschools. She then enrolled Child in a third school but withdrew her soon thereafter when staff identified behavioral issues and recommended a developmental evaluation. Child's play therapist supported Mother's subsequent plan to homeschool Child; Father engaged an expert who recommended public schooling.
¶ 9 For his part, Father engaged in inappropriate behavior that included threatening multiple providers, investigating the personal life of Mother's former counsel, filing a complaint (ultimately dismissed) against Mother with her professional licensing board, and filing so many specious motions that the court declared him a vexatious litigant and limited his ability to email Mother. Father also engaged in a physical altercation with Mother during a parenting-time exchange, which led to mutual orders of protection.
¶ 10 A psychologist evaluated Father and concluded in November 2015 that he suffers from anxiety and adjustment disorders. By the time of trial, Father had resumed contact with the same psychiatrist he had met with early in the case, and for several months had been taking anti-anxiety medication prescribed by that provider, to good effect.
¶ 11 Further, though the parents' relationship was volatile, Father's interactions with Child during his supervised parenting time were mostly appropriate. He did, however, experience gaps in visits, mostly attributable to his conduct toward Mother and supervisors. And his visits ceased entirely after May 2016, when the supervising agency withdrew because Father added liquid, which he said was folic acid, to Child's food without permission. A forensic social worker conducted home studies on both parents in August 2016, visiting with Mother and Child at Mother's rented condominium and with Father and Child at an extended-stay hotel room that Father rented for that purpose because his hotel-room residence lacked air conditioning. The social worker observed that Child appeared developmentally delayed but interacted positively with both parents, who both appeared to love Child and care about her future.
¶ 12 In late 2016, the superior court held an evidentiary hearing concerning, in major part, legal decision-making and parenting time. In the 58-page minute entry that followed, the court expressed concern that many of its interim orders, though justified by Father's unreasonable behavior, had harmed Child's relationship with both parents. The court further found that Father's behavior "provided the perfect foil for Mother to take advantage of the Court's perception of Father's apparent inability to properly parent the child," and "because of Father's bad behavior, the Court has repeatedly expected Mother to do the right thing in seeking certain medical, dental, educational and *1050 therapeutic evaluation and treatment of the child" but "[i]t is now abundantly clear that Mother has not done the right thing." The court made detailed findings regarding each of the factors set forth in A.R.S. §§ 25-403(B), -403.01(B), and -403.03.
¶ 13 The court awarded Mother and Father "joint legal decision-making authority" and specified:
Parental decisions shall be required for major issues in raising the child and in meeting on-going needs. When they arise, each parent shall give good faith consideration to the views of the other and put forth best efforts to reach a consensus decision. If the decision involves medical or schooling issues, the parties may further elect to seek input from treating physicians or educators. Both parents shall be provided with such input. If they cannot agree after making a good faith effort to reach an agreement, Father shall have the ability to make the final decision as to medical, mental health, dental, and therapy issues. If they cannot agree on educational decisions, excluding school choice, after making a good faith effort to reach an agreement, the parties shall participate in mediation before presenting an educational issue to the Court for resolution.
....
In most circumstances, the Court would decide which parent should have sole legal decision-making or final legal decision-making as to educational matters, because A.R.S. § 25-403 does not specifically authorize a Court to decide school choice. However, after considering the best interests of the child, the totality of the evidence demonstrates that this case is an exception in which the Court cannot designate Mother or Father as the ultimate legal decision-maker as to education. The Court finds that the parents do not agree on school choice, and that it is not in the best interests of the child that either parent should be given decision-making authority on school choice.
....
[I]n the best interests of the child, the child shall be immediately enrolled in an appropriate public elementary school in ... whatever school district would be the home district for Mother's residence that has the ability to evaluate the child and determine an appropriate IEP for the child.
The court further ordered that Child must receive specific medical, dental, and mental-health treatments and therapies.
¶ 14 With respect to parenting time, the court awarded Father unsupervised parenting time on a graduated schedule culminating in equal parenting time. The court also ordered that Father was entitled to recover attorney's fees and costs. Mother appeals.
DISCUSSION
I. DUE PROCESS
¶ 15 As an initial matter, Mother contends that she was denied due process because the court's enforcement of time limitations at trial meant that her testimony was brief. Due process requires that the superior court afford the parties a meaningful opportunity to present testimony when resolution of a material issue depends on credibility. Volk v. Brame , 235 Ariz. 462, 466, 469, ¶¶ 14, 20-21, 333 P.3d 789, 793, 796 (App. 2014). But the court need not "indulge inefficient use of time by parties or their counsel." Id. at 469, ¶ 22, 333 P.3d 789. Here, the court gave the parties additional time, in equal measure, and held an extended trial that resulted in lengthy, detailed findings. Mother was given a meaningful opportunity to be heard. The brevity of her testimony was the product of her counsel's strategic decisions regarding use of time at trial, and at the conclusion of Mother's testimony her counsel neither moved for additional time nor made any proffer of evidence.[2] Mother was not denied due process.
*1051 II. LEGAL DECISION-MAKING AND PARENTING TIME
¶ 16 Mother challenges several aspects of the superior court's orders regarding legal decision-making, which A.R.S. § 25-401(3) defines as "the legal right and responsibility to make all nonemergency legal decisions for a child including those regarding education, health care, religious training and personal care decisions." We review orders concerning legal decision-making and parenting time for an abuse of discretion. Nold v. Nold , 232 Ariz. 270, 273, ¶ 11, 304 P.3d 1093, 1096 (App. 2013). The court abuses its discretion only when the record is "devoid of competent evidence to support the decision." Borg v. Borg , 3 Ariz. App. 274, 277, 413 P.2d 784 (1966) (citation omitted).
A. Joint vs. Sole Legal Decision-Making
¶ 17 We begin by examining the meaning of the court's allocation of legal decision-making between the parents. The court purported to award the parties joint legal decision-making, and it directed them to make good-faith efforts to consult and agree on all decisions. But for medical, mental-health, dental, and therapy issues, the court gave "the ability to make the final decision" to Father.
¶ 18 An award of joint legal decision-making that gives final authority to one parent is, in reality, an award of sole legal decision-making. Under A.R.S. § 25-401(2), " '[j]oint legal decision-making' means both parents share decision-making and neither parent's rights or responsibilities are superior except with respect to specified decisions as set forth by the court or the parents in the final judgment or order." (Emphasis added.) Regardless of the labels used in a decree, when one parent has the final say, that parent's rights are superior and the authority therefore is not joint as a matter of law.
¶ 19 As § 25-401(2) recognizes, the court may decide to specify certain types of decisions as exceptions to a joint-legal-decision-making order. When the court creates those exceptions, it effectively creates orders for sole legal decision-making, carved out from a general order for joint legal decision-making. While the court may require in such cases that the parents consult with one another in good faith-a requirement that often serves the child's best interests by encouraging parental cooperation and informed decisions-the fact remains that one parent has the sole legal right to decide. And that is the essence of sole legal-decision-making authority under law: "one parent has the legal right and responsibility to make major decisions for a child." A.R.S. § 25-401(6) (emphasis added); see also A.R.S. § 25-410(A) (describing baseline rule that "the parent designated as sole legal decision-maker may determine the child's upbringing, including the child's education, care, health care and religious training"). Here, therefore, the court's orders generally established joint legal decision-making but gave Father sole legal decision-making with respect to medical, mental-health, dental, and therapy issues.[3]
B. The Court Acted Within Its Discretion by Allocating Sole Legal Decision-Making to Father on Medical, Mental-Health, Dental, and Therapy Issues, and by Awarding Father Unsupervised Parenting Time.
¶ 20 Mother challenges the sufficiency of the evidence supporting the award of sole legal decision-making and unsupervised parenting *1052 time to Father. She contends that the court should have adopted the best interests attorney's conclusions, and she contends that the evidence shows that Father is unfit to exercise sole authority or unsupervised parenting time. She further contends that the award erroneously disregarded her expert's opinion on Child's mental health while rubber-stamping opposing expert opinions. The court's careful minute entry belies those assertions, and we perceive no abuse of discretion.
¶ 21 Mother emphasizes that the court's orders did not align with the best interests attorney's position regarding legal decision-making and parenting time. She characterizes the best interests attorney as "the minor child's voice." But a best interests attorney is distinguishable from a child's attorney. See ARFLP 10(A)(1) (providing that the court may appoint one or more of a best interests attorney, a child's attorney, or a court-appointed advisor). A best interests attorney's role is not to advocate the child's personal position, but to advocate the child's best interests. Aksamit v. Krahn , 224 Ariz. 68, 72, ¶ 14, 227 P.3d 475, 479 (App. 2010). Moreover, with respect to either a best interests attorney or a child's attorney, the court is not bound by the attorney's arguments. "A child's attorney or best interests attorney shall participate in the conduct of the litigation to the same extent as an attorney for any party." ARFLP 10(E)(1). "However, like any other attorney functioning in a representative capacity, the argument and positions taken by the attorney do not themselves constitute evidence." Aksamit , 224 Ariz. at 71, ¶ 12, 227 P.3d 475.
¶ 22 Mother contends that the court disregarded and misunderstood the best interests attorney's arguments based on its observation that "the Best Interests Attorney has apparently concluded that the parents are capable of raising the child, [so] the Court can only hope that the parents will finally realize the benefit of abiding by the Court's Orders in the best interests of the child." That observation does not represent a disregard or misunderstanding of the best interests attorney's position. The court prefaced the observation by characterizing its decision on legal decision-making as "a 'Hobson's Choice' of having to choose one of two more equally objectionable alternatives, neither or none of which may be in the child's best interests" in view of the parents' inability to co-parent and the potential that either parent would exercise sole or final decision-making authority to the detriment of Child and of the other parent. The observation reflects the court's independent exercise of judgment and its fair observation that the best interests attorney did not advocate for a severe alternative-a non-parental solution to ensure Child's wellbeing.
¶ 23 The court considered the evidence and made detailed findings regarding all relevant factors, including those set forth in A.R.S. §§ 25-403(B), -403.01(B), and -403.03. The court did not, as Mother contends, ignore Father's mental-health issues or his history of erratic behavior. To the contrary, the court specifically and carefully considered Father's mental-health diagnoses and his past conduct, as well as many other relevant factors.
¶ 24 Mother emphasizes that Father's November 2015 psychological evaluation described him as having anxiety and adjustment disorders as well as several unfavorable personality traits, including a "general level of interpersonal effectiveness, social self-confidence, and self-esteem [that is] somewhat below average for child custody litigants," and a tendency to "persistently see things in terms of his own agenda and personal interests" and, "[w]hen stressed, threatened, or frustrated, ... to pursue his self-interests in urgent if not occasionally dramatic or forceful ways." But such disorders and traits do not automatically render a parent unfit or disqualify him from obtaining legal-decision-making authority or unsupervised parenting time.[4] Further, the court found that by the time of the trial, Father had benefited from mental-health treatment, as evidenced not only by his statements and his psychiatrist's *1053 report, but by his demeanor when testifying. Moreover, the court made well-supported findings that Father's interactions with Child during his supervised parenting time "were virtually always appropriate" and enjoyed by Child. And though Mother alleged that Father abused Child, the only evidence offered in support of those allegations was far from compelling: Child's play therapist reported that Child once stated that she was "scared of Daddy" and has assigned loud and threatening (but also fun) roles to toys designated as father figures in imaginative play; and Child was unable to be consoled by Father when she became frightened by a stranger's dog during the home-study visits.
¶ 25 To be sure, the evidence established, and the court expressly found, that Father is not an ideal parent. But on this record, the court did not abuse its discretion by determining that he was a fit parent who should hold sole decision-making authority with respect to medical, mental-health, dental, and therapy issues. Mother failed to obtain adequate therapies to address Child's developmental delays-whatever their cause-despite unanimous professional recommendations for therapies, and ample time to find providers. Mother also failed to ensure that Child received vaccinations and necessary dental care. Though Mother assigned blame for those failings to Father, the record demonstrates that at least some of the inattention to Child's needs resulted from Mother's decisions. The dental records, for example, reflect that as early as January 2016, Mother had multiple opportunities to pursue sedated treatment that the dentist deemed necessary to address Child's severe tooth decay but she chose not to do so. The family court is often called upon to make difficult decisions regarding legal decision-making when parents will not cooperate. And when the court finds that a child's health may be jeopardized by one parent, it may determine that the other parent should have sole legal-decision-making authority despite other shortcomings.
¶ 26 We also reject Mother's contention that the court abused its discretion by awarding unsupervised parenting time to Father. Supervised parenting time is warranted if "in the absence of [supervision] the child's physical health would be endangered or the child's emotional development would be significantly impaired, and if the court finds that the best interests of the child would be served." A.R.S. § 25-410(B). Based on the evidence presented, we discern no abuse of discretion in the court's conclusion that Father posed no threat to Child's physical or emotional well-being.
C. The Court Abused Its Discretion by Making Decisions That Are Legally Reserved for Parents.
¶ 27 A.R.S. § 25-403(A) empowers the court to "determine legal decision-making and parenting time." But nothing in the statute authorizes the court to make the legal decisions concerning a child's life. "Courts may do many things in the best interests of children, but they cannot advance such interests by exercising jurisdiction that they lack. Every power that the superior court exercises ... must find its support in the supporting statutory framework." Fenn v. Fenn , 174 Ariz. 84, 87, 847 P.2d 129, 132 (App. 1993) ; In re Marriage of Waldren , 217 Ariz. 173, 175, ¶ 8, 171 P.3d 1214, 1216 (2007) ("In Arizona, dissolution of marriage proceedings are creatures of statute, and jurisdiction to decide such cases is conferred on the courts by the legislature."). The court's statutorily prescribed role is not to make decisions in place of parents, but to decide which fit parent or parents shall make such decisions. Here, the court exceeded its legal authority, and therefore abused its discretion, when it ordered that Child must attend public school and receive certain medical, dental, and mental-health treatments.
¶ 28 A court faced with uncooperative, recalcitrant parents might reasonably believe that a child's best interests would be served by an order that effectively resolves a disputed issue. But we conclude as a matter of law that in a family-law case, the court does not have plenary authority to make decisions in place of the parents when it deems them to be in a child's best interests. Rather, the court must be guided by the best *1054 interests of a child in assigning legal-decision-making authority.[5]
¶ 29 In support of its school-choice order, the superior court relied on Jordan v. Rea , 221 Ariz. 581, 212 P.3d 919 (App. 2009). In Jordan , parents with joint authority under a parenting plan were unable to agree on whether the children should attend a private religious school. 221 Ariz. at 584, 586, ¶¶ 1, 11, 212 P.3d 919. This court concluded that because "each parent has chosen to exercise th[e] constitutional right [to direct the upbringing of the children] in a different manner[,] ... the [superior] court is called upon to resolve that conflict." Id. at 589, ¶ 20, 212 P.3d 919. We therefore remanded the case with directions that the superior court decide whether "it is in the child[ren]'s best interests to attend a private religious school." Id. at 592, ¶¶ 31-32, 212 P.3d 919. Today we depart from Jordan to the extent it held that the court may make substantive legal decisions for parents who are unable to agree. We find no statutory grant of authority for such decisions.[6] If the court determines that the parents cannot agree, the court must choose which parent shall decide. But the court cannot make the decision itself.[7]
¶ 30 The court may, of course, consider each parent's proposed decisions when allocating decision-making authority. Such information is directly relevant to the best-interests analysis under A.R.S. § 25-403. And findings explaining the court's reliance on parents' proposed decisions may provide important guidance in the event of a later petition to modify. See Reid v. Reid , 222 Ariz. 204, 209, ¶ 18, 213 P.3d 353, 358 (App. 2009) (holding that requirement for specific findings under § 25-403 not only aids appellate review but also "provide[s] the family court with a necessary 'baseline' against which to measure any future petitions by either party based on 'changed circumstances' ").
¶ 31 We therefore vacate the court's orders dictating school choice, and we remand for the court to decide which parent (or whether the parents jointly) shall decide which school Child will attend. We also vacate the court's orders directing that Child receive certain specific medical, dental, and mental-health care. The court granted Father sole decision-making authority with respect to such issues, and no further proceedings are required to enable Father to proceed with his decisions.
III. ATTORNEY'S FEES AND COSTS
¶ 32 Mother finally contends that the superior court erred by awarding attorney's fees and costs to Father under A.R.S. § 25-324(A). We review an award of attorney's fees under § 25-324(A) for abuse of discretion. Graville v. Dodge , 195 Ariz. 119, 131, ¶ 56, 985 P.2d 604, 616 (App. 1999).
¶ 33 Section 25-324(A) provides that:
*1055 The court from time to time, after considering the financial resources of both parties and the reasonableness of the positions each party has taken throughout the proceedings, may order a party to pay a reasonable amount to the other party for the costs and expenses of maintaining or defending any proceeding under ... chapter 4, article 1 of this title [regarding legal decision-making and parenting time].
¶ 34 By its plain language, the statute requires the court to consider both the parties' resources and the reasonableness of their positions. And because two factors must be considered, a neutral finding on one factor does not necessarily preclude an award. Here, the court found that "both parents acted unreasonably in the litigation." Mother correctly points out that Father was declared a vexatious litigant earlier in the proceedings. But all that means is that the court did not err by finding that Father acted unreasonably. Father's unreasonable behavior did not preclude a finding that Mother also acted unreasonably-and on this record, we find sufficient evidence to support that finding. We further find sufficient evidence to support the court's finding that "Mother has considerably more resources." Mother provided a financial affidavit reporting employment as a physician and substantial earnings; by contrast, Father lost his medical license and testified that he is financially reliant on family members. We cannot say that the court abused its discretion by concluding that the parties' collective unreasonableness and the stark financial disparity, taken together, weighed in favor of an award of fees and costs to Father.
CONCLUSION
¶ 35 We vacate and remand the court's school-choice orders, and we vacate the court's orders directing that Child receive certain specific medical, dental, and mental-health treatments. We further vacate any requirement for mediation on issues for which Father has sole legal-decision-making authority. We otherwise affirm. In exercise of our discretion, we deny both parties' requests for attorney's fees on appeal.

While the experts expressed suspicion that the developmental issues were caused by trauma inflicted by Father, one later stated that he was "pretty unhappy with the selective information [he] was provided [with] by [Mother]" and was "pretty unhappy with ... getting 'duped.' "

At oral argument on appeal, Mother indicated that she proffered evidence in an unsuccessful motion for new trial. The motion, however, only generally sought "an opportunity to be heard and fully rebut the allegations against her regarding her compliance with the Court orders." Mother did not describe any specific evidence that she was precluded from providing. The motion was not a sufficient proffer. See A Tumbling-T Ranches v. Flood Control Dist. of Maricopa Cty. , 222 Ariz. 515, 543, ¶ 99, 217 P.3d 1220, 1248 (App. 2009) ("An offer of proof is 'simply a detailed description of what the proposed evidence is.' " (citation omitted) ).

The court's requirement that parties attempt to agree on parenting issues is a permissible aid to parents in their exercise of joint legal-decision-making authority. Further, the court may order that parents with joint legal decision-making engage in court-sponsored mediation services, because they are available through the superior court at de minimus cost.
When the court awards sole legal-decision-making authority, it similarly may require that the parties attempt to agree in good faith before the parent with authority makes a decision-and a failure to act in good faith under such an order could eventually lead the court to revisit the grant of sole authority to a particular parent. But a mediation requirement when one parent has sole authority runs afoul of the concept of sole authority.

We categorically reject Mother's suggestion that a parent with a professional health license should always be given legal-decision-making authority or that a parent who has lost such a license should never be given authority. Such a rule appears nowhere in law.

A.R.S. § 25-410(A) provides a mechanism by which the court may limit a parent's sole legal-decision-making authority (as opposed to reallocating the authority under § 25-411). That statute contemplates a preexisting sole-authority award and requires a motion and hearing-conditions that are not present here. Section 25-410(A) applies only in extreme circumstances and authorizes only the imposition of a "limitation" on the parent's authority when, on motion by the other parent, the court finds that in the absence of "a specific limitation of the parent designated as the sole legal decision-maker's authority, the child's physical health would be endangered or the child's emotional development would be significantly impaired ." (Emphasis added.)

A.R.S. § 25-403.02(D) provides: "If the parents are unable to agree on any element to be included in a parenting plan, the court shall determine that element. The court may determine other factors that are necessary to promote and protect the emotional and physical health of the child." This is not a grant of authority for the type of decision at issue in Jordan . Section 25-403.02 defines the required elements of a parenting plan, and none relate to the authorization of particular substantive decisions. To read the statute to permit the court to make parental decisions any time the parties cannot agree would be to render the concept of sole legal decision-making meaningless.

It would be anomalous to suggest, in the absence of proceedings instituted under Title 8, Chapter 4, of the Arizona Revised Statutes, that married parents could be required to have the court make decisions concerning their children when they were unable to agree on an issue. The absence of a marriage does not imply, and our statutes do not provide, that the government becomes imbued with the power to make parental decisions simply because fit parents are unmarried.